IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RDS REAL ESTATE, LLC**                                                                            **PLAINTIFF**

v.                                                              **CAUSE NO. 1:15CV361-LG-RHW**

**ABRAMS GROUP CONSTRUCTION, LLC,**
**et al.**                                                                                           **DEFENDANTS**

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE

BEFORE THE COURT is the [135] Motion for Partial Summary Judgment filed by Plaintiff RDS Real Estate, LLC, against all Defendants, and the [150] Motion to Strike Plaintiff's Claim for Fraudulent Transfer filed by Defendant Abrams Group Construction, LLC. Having considered the parties' submissions and the relevant law, the Court is of the opinion that both Motions should be denied.

### BACKGROUND

According to the [107] Amended Complaint, in 2009, Plaintiff RDS Real Estate contracted with another entity, S&S Construction, LLC, "to construct a building in Ocean Springs, Jackson County, Mississippi, that would be used for medical office space . . . ." (*Id.* at 4 (¶26)). RDS alleges that soon after it "accepted occupancy of the building," it began experiencing problems, including roof leaks, as a result of unworkmanlike construction. (*See id.* at 5 (¶¶ 35-36)).

RDS claims that, unbeknownst to it, "[i]n the time frame around December 2010 through April 2011, S&S Construction, LLC sold all its assets to Abrams Group Construction, LLC." (*Id.* at 6 (¶42)). It further contends that it eventually incurred approximately $214,000.00 in costs "to correct the construction defects

caused by S&S." (*See id.* at 8-9 (¶¶ 64-70)). RDS then filed a lawsuit in this district against S&S and Abrams, but later dismissed Abrams without prejudice and proceeded to arbitration with S&S. The arbitration resulted in "an award in favor of RDS in the amount of $240,898.14[,]" which the district court affirmed and on which its entered a final judgment. (*See id.* at 9-10 (¶¶ 82-86)). RDS alleges that "[t]he judgment has not been paid[, and that] S&S has made representations that is has no money to pay the . . . judgment." (*See id.* at 10 (¶¶ 86-87)).

As a result, in October 2015, RDS instituted this action against Abrams; George Spellmeyer, Norma Spellmeyer, and Michael Spellmeyer (collectively, "the Spellmeyer defendants"), who RDS claims "are, or were, members of S&S" (*see id.* at 13(¶123)); and, by later amendment in 2016, Tusitala, Inc., which RDS alleges is owned by one or more of the Spellmeyer defendants. RDS seeks to pierce S&S's corporate veil and hold the Spellmeyer defendants individually liable for the judgment it obtained against S&S. It also argues that S&S made fraudulent transfers to the Spellmeyer defendants and to S&S Seafood, which it claims is a d/b/a of Defendant Tusitala. Additionally, RDS "requests a declaratory judgment that the judgment RDS obtained against S&S also applies to Abrams, as they are the same entity."[1] (*See id.* at 11 (¶100); *see also id.* at 13 (¶120)).

In its Motion for Partial Summary Judgment, RDS contends that the Defendants "have transferred assets in an effort to avoid and/or delay their

---

[1] The Court has already denied RDS's Motion for Summary Judgment on the declaratory judgment claim. (*See* Order, ECF No. 175).

payment obligations to RDS. Through a series of transfers and transactions, the Defendants have stripped S&S Construction, LLC of its assets and have made S&S Construction judgment proof." (RDS Mot. 1 (¶3), ECF No. 135). It "seeks a partial summary judgment declaring that the transfers were fraudulent under the Uniform Fraudulent Transfer Act." (*Id.* at 2 (¶4)). It "also seeks partial summary judgment that the veil of S&S Construction, LLC should be pierced and that the Spellmeyers should be jointly and severally liable." (*Id.*)

Defendants have opposed the Motion, and RDS has filed Rebuttals. Defendant Abrams has also filed a Motion to Strike. Abrams argues that RDS "did not allege a sufficient basis in its Amended Complaint for a judgment against this Defendant based upon a fraudulent transfer." (Abrams Mem. In Support of Mot. To Strike 2, ECF No. 151). Abrams also challenges the legal sufficiency of any fraudulent transfer claim against it.

## DISCUSSION

A summary judgment motion shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant "fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant carries its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25

(1986). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "In reviewing the evidence, the court must 'refrain from making credibility determinations or weighing the evidence.'" *Id.* (citation omitted).

This is a diversity case and the parties dispute whether Alabama or Mississippi state law applies. Therefore, in determining whether RDS is entitled to judgment as a matter of law, the Court first determines what law applies to the claims at issue. It then discusses RDS's summary judgment arguments of fraudulent transfers, including Abrams' Motion to Strike related to the same. Finally, the Court addresses RDS's contention that S&S's corporate veil should be pierced and that the Spellmeyer defendants should be found individually liable for RDS's judgment against S&S.

**Choice of Law**

The Court finds that for purposes of RDS's arguments for partial summary judgment based on fraudulent transfers, there is no true conflict between Alabama and Mississippi law. Both states have adopted the Uniform Fraudulent Transfer Act (UFTA). *See* Miss. Code § 15-3-119 ("This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it."). While there are slight differences in the constructive fraud provisions of each state's UFTA, discussed below, the Court finds that those differences do not affect the summary judgment analysis, and, thus, a

4

choice of law analysis at this stage is unnecessary. *See, e.g.*, *Tupelo Mfg. Co. v. Cope Indus., Inc.*, No. 1:05CV114-B-D, 2006 WL 1313809, at *1 n.1 (N.D. Miss. May 11, 2006); Accordingly, the Court will apply Mississippi law to the fraudulent transfer claims. *See, e.g., Fireman's Fund Ins. Co. v. Ill. Nat'l Ins. Co.*, No. 3:12-CV-657-CWR-FKB, 2015 WL 1198079, at *4 (S.D. Miss. Mar. 13, 2015) ("[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary, and the law of the forum state will apply.") (citations, quotation marks, and brackets omitted).

RDS contends that Alabama law applies to its attempt to pierce S&S's corporate veil, and the Spellmeyer defendants argue that Mississippi law applies. Mississippi's Limited Liability Act, Miss. Code §§ 79-29-1001, *et seq.* provides in pertinent part that "the laws of the state . . . under which a foreign limited liability company is organized govern . . . the liability of its members . . . ." Miss. Code § 79-29-1001.

This Court agrees with other federal courts in Mississippi who have interpreted this provision to mean that when a party attempts to pierce the corporate veil of the LLC, the law of the state under which the LLC exists applies. *See Robinson v. Denbury Onshore, LLC*, No. 4:11CV18-DPJ-LRA, 2012 WL 1883594, at *2 n.1 (S.D. Miss. May 22, 2012); *Benson v. City Fin. Co.*, No. 1:02CV242-D-D, 2003 WL 21517998, at *2 (N.D. Miss. May 16, 2003); *Andrews v. Kerr McGee Corp.*, No. 1:00CV158-D-A, 2001 WL 1704144, at *2 (N.D. Miss. Dec. 5, 2001); *In re Huffman*, No. 12-00177-NPO, 2013 WL 2481529, at *5 (Bankr. S.D. Miss. June 10, 2013). Because S&S is an Alabama LLC, Alabama law applies to

5

the allegations that the Spellmeyer defendants should be personally liable for the judgment obtained against S&S.

**Fraudulent Transfers**

Under Mississippi's UFTA, "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim[2] arose before or after the transfer was made . . . , if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor of the debtor." Miss. Code § 15-3-107(1). Here, there is no real issue of fact that S&S is a debtor and that RDS is a creditor under the statute, but the parties dispute in great length whether there was actual intent to hinder, delay, or defraud.

Courts generally consider eleven "badges of fraud" in determining whether a transfer was made with actual intent to hinder, delay, or defraud. While this list is not exhaustive,

> consideration may be given, among other factors, to whether:
>
> (a) The transfer . . . was to an insider;
>
> (b) The debtor retained possession or control of the property transferred after the transfer;
>
> (c) The transfer . . . was disclosed or concealed;
>
> (d) Before the transfer was made . . . , the debtor had been sued or threatened with suit;

---

[2] Under UFTA, a "'[c]laim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Miss. Code § 15-3-101(c); Ala. Code § 8-9A-1.

>(e) The transfer was of substantially all the debtor's assets;
>
>(f) The debtor absconded;
>
>(g) The debtor removed or concealed assets;
>
>(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ;
>
>(i) The debtor was insolvent or became insolvent shortly after the transfer was made . . . ;
>
>(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; [and]
>
>(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor . . . .

Miss. Code § 15-3-107(2).

Although there is little Mississippi case law on UFTA, there is ample case law from courts in other jurisdictions that have adopted UFTA and from bankruptcy courts discussing related provisions of the Bankruptcy Code. "No specific combination of badges is necessary for a finding of actual intent and the presence of any of the badges of fraud does not compel such a finding." *In re Vista Bella, Inc.*, 511 B.R. 163, 194 (Bankr. S.D. Ala. 2014). "The badges merely highlight circumstances that suggest that the transfer was made with fraudulent intent. With that being said, it is clear that actual intent to hinder, delay, or defraud is a heavily fact-dependent question." *Id.* at 194-95.

RDS also argues that it has shown the elements for constructive fraud under Alabama Code § 8-9A-5(a), which is nearly identical to Mississippi's constructive fraud statute, Mississippi Code § 15-3-107(2)(m). Under § 15-3-107(2)(m),

7

> [a] transfer made . . . by a debtor may be fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange . . . for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .[3]

In interpreting a similar provision of the Bankruptcy Code, the Fifth Circuit "ha[s] recognized that the question of reasonable equivalence is usually a question of fact, or is at least fact-intensive." *See In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003); *see also Matter of Zedda*, 103 F.3d 1195, 1206 (5th Cir. 1997) ("Whether a transfer is made for a reasonably equivalent value is, in every case, largely a question of fact."). Similarly, another federal district court discussing UFTA has stated that "the issue of whether a debtor received reasonably equivalent value is fact-intensive, and thus frequently not suitable for resolution through summary judgment." *See Hoffman v. AmericaHomeKey, Inc.*, No. 3:12-CV-3806-B, 2014 WL 7272596, at *12 (N.D. Tex. 2014).

---

[3] The only substantive difference, for purposes of this action, between the Alabama and Mississippi constructive fraud statutes is that the Alabama fraud statute states that "[a] transfer made by a debtor *is* fraudulent[,]" Ala. Code § 8-9A-5(a) (emphasis added), as opposed to the Mississippi's statute's "may be fraudulent" language. Nonetheless, the elements to find constructive fraud as a matter of law are the same under both statutes, and, thus, the Court need not resolve the choice of law issue at this stage but will do so prior to the trial in this matter unless the parties indicate to the Court at the pretrial conference that they have resolved this issue. Moreover, while RDS makes passing reference to other statutes for its constructive fraud argument, this is the only provision for which it provides any substantive discussion in its initial brief. (*See* RDS Mem. 31-32, ECF No. 137). The Court will not consider arguments raised for the first time in reply. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs.").

A.  **Abrams' Motion to Strike the Fraudulent Transfer Claim**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." RDS alleged, *inter alia*, that "[t]he assets of S&S Construction, LLC were supposedly worth over $500,000. Yet, Abrams only paid . . . less than $75,000 for these assets." (Am. Compl. 12 (¶¶ 113-14), ECF No. 107). While these allegations were made in the context of the "Declaratory Judgment" heading, "Rule 8(a)(2) . . . does not treat legal descriptions of a claim the same as factual averments." *Johnson v. Honda*, No. 3:15cv223-DPJ-FKB, 2015 WL 5794449, at *3 (S.D. Miss. Oct. 1, 2015). "A complaint need not . . . articulate a perfect 'statement of the legal theory supporting the claim asserted.'" *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (citing *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014)) (emphasis in original). All that is required of a plaintiff is to inform the defendant "of the factual basis for their complaint . . . ." *See Johnson v. City of Shelby*, 135 S. Ct. at 347. Here, the Court finds that, while RDS's Amended Complaint could be clearer, the Amended Complaint satisfies this low threshold.

Additionally, RDS alleged that "Abrams should be liable to [it] for the judgment [obtained against S&S] under theories of estoppel, merger, and other successor liability theories." (Am. Compl. 12 (¶103), ECF No. 107). One of the ways of showing successor liability is to show that a transaction was fraudulent. *See*

9

*Paradise Corp. v. Amerihost Dev., Inc.*, 848 So. 2d 177, 179 (Miss. 2003).[4] In this respect, RDS is permitted to offer evidence of alleged fraudulent transfers to Abrams in support of its successor liability theory. It appears that this is what RDS is attempting to do anyway, and that the parties' dispute about whether a fraudulent transfer claim was stated against Abrams is largely semantic. Namely, in making its fraudulent transfer argument, RDS states that it is seeking judgment against Abrams "in the amount of the judgment [obtained against S&S], which is less than the value of the property transferred . . . ." (RDS Mem. 29, ECF No. 137). This is no different than the relief it seeks in its declaratory judgment based on successor liability, *i.e.*, a monetary judgment in the amount of the judgment obtained against S&S.

Abrams argues that a fraudulent transfer claim cannot be stated against it in any event because it is not a "debtor." However, UFTA specifically provides for claims against a transferee of a debtor. *See* Miss. Code §§ 15-3-111 to -113; *Swift Fin. Corp. v. Bath Planet of Miss., LLC*, No. 3:15CV846-DPJ-FKB, 2016 WL 3180291, at *6 (S.D. Miss. June 6, 2016); *see also* Ala. Code §§ 8-9A-7 to -8. Furthermore, neither UFTA nor case law interpreting the statute required that RDS name S&S as a party to this action, as argued by both Abrams and the other

---

[4] As discussed in the Court's [175] Order, a choice of law analysis is unnecessary for RDS's allegations of successor liability because Alabama and Mississippi law do not conflict on this issue.

Defendants.[5] *See, e.g.*, *Bally Gaming, Inc. v. Caldwell*, 12 F. Supp. 3d 907, 917 (S.D. Miss. 2014); *see also Canty v. Otto*, No. CV0950281525, 2010 WL 797206, at *5 (Conn. Super. Ct. Feb. 4, 2010) ("the court is persuaded by the majority view that the debtor is not a necessary party in this UFTA action"); *Official Post-Confirmation Comm. of Creditors Holding Unsecured Claims v. Markheim*, No. CV-04-040, 2005 WL 3340353, at *2 (Me. Super. Ct. Oct. 7, 2005) ("Cases interpreting the UFTA do not bear out [the] contention . . . that the transferor is a necessary party to a fraudulent conveyance action. Rather they indicate only that the *transferee* is a necessary party . . . .") (emphasis in original). Accordingly, the Court will deny the Motion to Strike.

  **B. RDS's Arguments of Fraudulent Transfers to Abrams**

Turning to RDS's substantive arguments related to Abrams, RDS argues that: (1) Abrams was an insider; (2) S&S retained possession or control of the property transfer after the transfer; (3) the transfer was concealed; (4) before the transfer was made, S&S had been sued or threatened with suit; (5) the transfer was of substantially all of S&S's assets; (6) the value of the consideration was not reasonably equivalent to the value of the asset transferred; and (7) S&S was insolvent or became insolvent shortly after the transfer. Although the Court agrees with RDS that the focus of this inquiry is on S&S's (as opposed to Abrams') intent,

---

[5] The Spellmeyer defendants and Tusitala have also filed Motions for Summary Judgment, which the Court will consider in a separate Order, but the Court is not persuaded by the argument that this action should be dismissed for failure to join S&S as a necessary and indispensable party.

the Court is of the opinion that summary judgment is inappropriate because it does not find as a matter of law that there was actual intent to hinder, delay, or defraud RDS. Rather, this is an issue for the jury to decide.

First, the Court does not find for summary judgment purposes that Abrams was an insider under UFTA. *See* Miss. Code § 15-3-101. At the very least, there are issues of fact about the nature of the deal between S&S and Abrams that preclude such a finding. RDS argues that "Abrams Group was an affiliate because [it] controlled substantially all of the debtor's (S&S Construction's) assets." (RDS Mem. 24-25, ECF No. 137). But there is no showing that Abrams controlled those assets before the sale, and, construing the evidence in the light most favorable to Abrams, this was a true asset sale, *i.e.*, Abrams did not control S&S's assets, it owned them outright after the sale. Furthermore, any relationship or previous business dealings between William Abrams (one of the owners of Defendant Abrams) and Michael Spellmeyer – while such may be probative evidence of insider status for the jury – does not equate to insider status as a matter of law.

Second, there is conflicting evidence regarding several of the other badges of fraud, including who actually retained possession or control of some of the property, whether the transfer was concealed, and the amount of assets transferred. And, third, even if multiple badges of fraud were undisputed, there is evidence that the reason for the sale was a decline in the construction market, and not any bad intent. *See, e.g., Hoffman*, 2014 WL 7272596, at *12 (presence of some badges of fraud was "not so overwhelming as to rule out the possibility that a reasonable juror

could find that [a debtor] lacked the intent to defraud[, especially where there was] evidence that tend[ed] to support or alternative explanation for" the transfer at issue); *see also, e.g.*, *In re Vista Bella*, 511 B.R. at 194-95 (presence of some of the badges of fraud does not mandate a finding of actual intent). For all these reasons, then, the Court declines to find that a fraudulent transfer has been shown as a matter of law with respect to S&S's transfers to Abrams. *See, e.g.*, *De Beck v. United States*, No. SA-11-CA-45-FB, 2012 WL 12860949, at *28 (W.D. Tex. July 31, 2012), rep. and rec. adopted, *Garcia DeBeck v. Beck*, 2013 WL 12086642 (W.D. Tex. Mar. 26, 2013) ("Although there is some evidence of certain 'badges of fraud,' which, if believed, could support an inference of fraudulent intent . . . , fraudulent intent typically is not appropriate for summary judgment because it is a question of fact generally reserved for the trier of fact.").

Finally, while RDS argued constructive fraud in its initial brief, it appears to the Court that this argument was made only in relation to the claims against the Spellmeyer defendants. (*See* RDS Mem. 22-24, ECF No. 137). Thus, the Court need not consider RDS's argument made for the first time in reply that Abrams should also be liable for constructive fraud. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008). Regardless, once again, viewing the evidence in the light most favorable to Abrams, the Court does not find summary judgment appropriate. For example, RDS's contention that S&S did not receive reasonably equivalent value for certain property based on the way that the purchase was

13

structured is a matter better-suited for the jury to decide.[6] *See, e.g.*, *Hoffman*, 2014 WL 7272596, at *12-14.

### C. RDS's Arguments of Fraudulent Transfers to Tusitala and the Spellmeyer defendants

As with Abrams, there are genuine issues of material fact regarding RDS's fraudulent transfer claims against Tusitala and the Spellmeyer defendants. This includes conflicting evidence about whether the alleged transfers were made to repay loans owed by S&S. Again, while some badges of fraud are present, the Court does not find that these require a finding of actual intent as a matter of law. *See, e.g.*, *In re Vista Bella*, 511 B.R. at 194-95; *Hoffman*, 2014 WL 7272596, at *12-14; *De Beck*, 2012 WL 12860949, at *28.

With respect to any claim of constructive fraud against these defendants, some of the transfers were made before RDS alleges that its claim arose in 2010, and, thus, do not meet all of the essential elements for such a claim. *See* Miss. Code § 15-3-107(m). Even so, there is evidence – primarily deposition and affidavit testimony of Norma Spellmeyer – that the transfers were loan repayments. *See* Miss. Code § 15-3-105 ("Value is given for a transfer . . . if, in exchange for the transfer . . . , property is transferred or an antecedent debt is secured or satisfied."); *see also, e.g.*, *Hamilton Cty. Emergency Commc'ns Dist. v. Orbacom Commc'ns*, No. 1:04-CV-7, 2006 WL 36883, at *7 (E.D. Tenn. Jan. 4, 2006) ("[i]f the payments to

---

[6] The other Defendants also raised the issue that the applicable statute of limitations may bar any constructive fraud claim against Abrams.

[transferees] were simply repayments of loans, the transfers would not violate" UFTA). While RDS vehemently disputes this explanation, at the summary judgment stage, the Court does not weigh the evidence or make credibility determinations. *See Deville*, 567 F.3d at 164.

Finally, RDS argued in its [165] Rebuttal that even if the transfers were repayment of loans, Alabama Code § 8-9A-5(b) or Mississippi Code § 15-3-107(n)[7] should apply to the transfers. (*See id.* at 23-24). However, RDS's mere passing reference to this statute in its initial brief, (*see* RDS Mem. 31-32, ECF No. 137), was insufficient to raise this argument, and, as discussed above, the Court will not consider arguments raised for the first time in reply.[8] *See, e.g., Taylor v. U.S. ex rel. U.S. Drug Enf't Admin.*, No. 4:14-CV-00041-DMB, 2015 WL 5971188, at *8 (N.D. Miss. Oct. 14, 2015) (stating, in denying summary judgment, that "Issues adverted in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.") (citation, quotation marks, and brackets omitted). Moreover, RDS cannot genuinely state that it was unaware prior to summary judgment that Defendants

---

[7] "A transfer made by a debtor may be fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe the debtor was insolvent." Miss. Code § 15-3-107(n).

[8] Nevertheless, RDS is not precluded from raising this argument at trial, as appropriate.

were taking the position that the transfers were repayments of loans, as Norma Spellmeyer discussed this at length in her deposition. And, even if the Court were inclined to accept RDS's argument based on § 15-3-107(n), there are multiple transfers alleged on multiple dates, and the onus is not on this Court to determine which ones, if any, meet the requirements of the statute.

**Piercing the Corporate Veil**

"[U]nder Alabama law, it is possible to 'pierce the veil' of an LLC in some situations." *Filo Am., Inc. v. Olhoss Trading Co.*, 321 F. Supp. 2d 1266, 1269 (M.D. Ala. 2004). Factors to consider "are: (1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; (3) operation of the corporation as an instrumentality or alter ego." *See id.*

> The Alabama Supreme Court [has] also held . . . that, in order to impose liability on a defendant for the acts of a corporation on the grounds that the corporation was an 'instrumentality' or 'alter-ego' of the defendant, a plaintiff must show that:
>
> 1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that, at the time of the attacked transaction, the subservient corporation had no separate mind, will, or existence of its own;
>
> 2) The control must have been misused by the dominant party . . . ;
>
> 3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*Mama's Enters., LLC v. United States*, 883 F. Supp. 2d 1128, 1135 (N.D. Ala. 2012) (citing *Messick v. Moring*, 514 So. 2d 892, 945-95 (Ala. 1987) (brackets omitted). All

three elements must be present "to allow a piercing of the corporate veil" under an alter ego theory. *See First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1335 (Ala. 1991).

"The concept that a corporation is a legal entity existing separately from its shareholders is well settled in Alabama." *Id.* at 1334. Thus, "[u]nder Alabama law, 'piercing the corporate veil is not a power that is lightly exercised.'" *Strickland v. Champion Enters., Inc.*, No. 1:06-CV-682-TFM, 2007 WL 1837136, at *4 (M.D. Ala. June 26, 2007) (citation and brackets omitted); *Blanton*, 585 So. 2d at 1334. "Given the fact-intensive nature of the veil-piercing analysis, the determination is typically one to be resolved at trial, where the trier of fact can make choices as to credibility and weight of the evidence." *Strickland*, 2007 WL 1837136, at *4.

For the sake of brevity, the Court finds it unnecessary to include a detailed analysis of each of RDS's arguments on this issue. The Court has carefully considered the relevant factors, and finds that there are multiple issues of material fact surrounding the veil-piercing allegations that prevent it from finding in RDS's favor as a matter of law.

For example, the evidence regarding inadequacy of capital is disputed and, even accepting RDS's assertion that S&S was undercapitalized, inadequacy of capital alone is insufficient "to establish personal liability." *See Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 929-30 (Ala. 2012). Regardless, there are also genuine issues of material fact surrounding the other factors to be considered, including conflicting evidence with respect to monetary transfers that were made out of the

17

S&S account. This includes disputes of fact concerning whether the money was transferred to pay back loans or whether it was used for personal expenses or some other improper purpose. *See, e.g.*, *id.* at 931-32 (transfers alone do not justifying piercing the corporate veil; rather, the transfers have to be "somehow unfair, fraudulent, or otherwise not legitimate"). Similarly, there is also evidence that a downturn in the economy caused S&S to contemplate selling its assets and that it did not have notice of significant problems at the RDS building at issue until after it began negotiating with Abrams to transfer assets.

## CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter this result. The Court again emphasizes that it does not assess witness credibility or weigh the evidence on summary judgment. *See Deville*, 567 F.3d at 164. But, viewing the evidence in the light most favorable to the non-movant Defendants, as the Court must at this stage, the Court cannot say that RDS is entitled to judgment as a matter of law on its fraudulent transfer claims against all Defendants and in its attempt to pierce the corporate veil of S&S and hold the Spellmeyer defendants personally liable. The Court is also of the opinion, as discussed herein, that Abrams' Motion to Strike is not well-taken.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [135] Motion for Partial Summary Judgment filed by Plaintiff RDS Real Estate, LLC, is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [150] Motion to Strike filed by Defendant Abrams Group Construction, LLC, is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 20th day of January, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE